Good morning. Welcome to Alaska. May it please the court. My name is Michael Marks and I represent Mr. Gillespie. The district court erred in denying Mr. Gillespie's motion for compassionate release when it found that the conditions of confinement that he presented were simply too widespread to constitute extraordinary and compelling circumstances under the statute. That rule is inconsistent with both the statute and this court's precedent and this court should reverse. I want to start briefly talking about the standard of review. There seems to be some dispute between us and the government. Certainly these motions are reviewed for abuse of discretion. But the first step in this abuse of discretion test is to figure out whether or not the court identified the correct governing legal principle. And here what the court did clearly first was determine a rule that was interpreting what extraordinary and compelling means. And it had to do that because of course there's no applicable guidance from the guidelines at this time. And so the rule that it adopted was that conditions that are shared by nearly every inmate in the country are not extraordinary and compelling. That's a rule of law that the court applies in a whole class of cases. Why is that rule wrong, at least where the conditions are not egregious? Well, I guess I would not agree that the conditions here were not egregious. Well, but you're not making an Eighth Amendment argument. No. In other words, you're not saying he should be released from confinement because the conditions of his confinement were so severe that they violate the Constitution. What you're saying is this is a changed circumstance because when the judge sent him to prison, this wasn't what was going to be expected. Something changed. Something changed. Prison conditions changed. So getting back to Judge Bress's question, if they were essentially the same prison conditions that every other prisoner in the country faced, would they be extraordinary and compelling? Yes. I think the straightforward understanding of extraordinary, extraordinary is not ordinary. And the question is not— Well, wouldn't they be ordinary? No, I don't think— If everybody faced them? No. Well, because everybody doesn't face them. I think when you think about the statute, right, the statute wasn't written just to cover people who were incarcerated during the pandemic, right? The statute is written to cover anybody who's imprisoned. And so the question really is, is this an ordinary conditions that would be faced in the carceral setting? Are these something that are inherent in the prison experience? Contrast it with something like, you know, they won't let me leave, right? I have to wear a uniform. I don't like the food. Let me ask the question differently. Would every prisoner incarcerated in the institution that your client was incarcerated in have the same argument? Would they all be able to demonstrate extraordinary and compelling circumstances? Well, potentially, but I don't—I'm not asking the court to conclude that. No, I'm asking whether we have to conclude that in order to buy your argument. Well, all I'm— Your argument is really not very much individualized. I mean, what he says is because I'm there, I'm locked down 23 hours a day. I don't have access to recreation. I don't have access to all the things, and they weigh heavily on my mind. But isn't that the same argument that every other prisoner, at least in this institution, could make? Potentially. I mean, I don't know. It's not in the record what conditions other prisoners were facing at the institution, but I think that's certainly possible. I don't think there's anything wrong with that. I think, for example, if someone were to say, you know, I have terminal cancer, we don't ask, well, how many other people have terminal cancer too? I mean, these were experiences that Mr. Gillespie suffered during the pandemic, and they are not an ordinary part of imprisonment. They are above and beyond what the prison setting is supposed to be. And whether or not that was experienced by him or everybody at Sheridan or, frankly, everybody in BOP or everybody in prison, I don't think changes the question. I mean, these are not ordinary times. And I think I used the example in my brief of, you know, a fire in one apartment is an emergency. It doesn't mean that, you know, it's not an emergency if the entire building is on fire. I don't think there's really anything controversial saying that everybody who was in custody during this pandemic suffered particularly severely in a way that people haven't in the past. Well, I mean, we've seen a lot of cases arguing basically, I mean, here the jail undertook different measures to try to keep people safe during the pandemic. We've seen other cases where people have criticized the lack of such measures and have said there's too much mixing of people, and that's resulting in greater incidence of disease spread. And so here the jail essentially isolated people more, and now we have the argument that that's an extraordinary circumstance that should justify release. These things seem somewhat incompatible, and the jail is sort of faced with two different sets of concerns, if you will. Well, first of all, we're not trying to sanction the jail. We're not trying to say the BOP necessarily did anything wrong. I mean, it may have, but that's not my argument, that it did something wrong by incarcerating Mr. Gillespie in the way that it did during these times. The fact is he suffered 23-hour-a-day lockdowns. I mean, if you read his pro se motion, didn't have access to laundry, barbershop, job training, exercise, visitation with family, calls, e-mails with family. And this is really severe. This is bordering on solitary confinement. Whether or not that was necessary for the BOP to do doesn't change the fact that that situation that he experienced, which he said at the time of his pro se motion had been going on for 18 months, means that his time was more punitive than somebody who spent those 18 months not in a 23-hour-a-day lockdown and experiencing all of those different things. And so all he's saying is, Judge, in my case, I want you to make an individualized determination and say, what were those circumstances so severe that I should have a reduction in my sentence to account for the more punitive nature of the incarceration? Does he have anything specific to him to say, you know, in light of my personal circumstances, whether those are medical circumstances or some other personal circumstances, that these conditions are causing unique harm? So specific to him and different from other people who experienced? Different from other people because I'm just to pick up on Judge Hurwitz's point that your argument is essentially these are extraordinary times, these measures that have been taken in the prison are extraordinary. Therefore, it follows that all of these can that the incarceration is now subject to extraordinary conditions nationwide. And perhaps everybody in your client's position would have the same argument. And so I'm asking, do you have a narrow argument that Mr. Gillespie himself is uniquely susceptible to these conditions that make his incarceration particularly harmful? The short answer is no. But but I think it doesn't matter. He's a human being. And the fact is that I don't think there I really don't think anybody could make a serious argument that suffering what he did is what we expect prison to be like. I mean, this is this is the kind of treatment that you get for a short period of time. If you've committed some sort of, you know, violent act inside of the prison. This isn't how we treat just anybody. Let me ask you a question about the state of this record, because I read the record. Judge Gleason turned you down on the first prong, which is extraordinary and compelling circumstances and never got to the thirty five fifty three factors, correct? Correct. So if you were to prevail, what we would have to do is remand for her to determine whether those factors justified compassionate release. Not necessarily. I'm not asking the court to determine to say you must find that these. No, that's what I'm saying. We would have to send it back to her. Even if we found she erred on the extraordinary and compelling circumstances to determine whether or not the thirty five fifty three factors. Yes, she would certainly have to do that. And thirty three thirty. I guess what I'm saying is I'm not asking the court even to order her to find that the there were extraordinary compelling circumstances. What what I'm saying is there's a legal rule that she made that said, hey, if it's too widespread, it doesn't. It just can't count as a matter of law as extraordinary and compelling. There's a second step. What are you asking? Yeah, I understand that. Fifty three thirty three fifty three factors. I understand that. My question is, what relief are you asking us to do? I know you want us to vacate and remand. What should we tell the judge to do if you prevail? Make an individualized determination based on the circumstances that Mr. Gillespie faced himself as outlined in his factual presentation between his pro se motion. Without any reference to whether or not other people are in the same situation. Without without a legal rule that bars relief because too many other people. I mean, that's the rule that she created, which I think is wrong. And so I think the court should say that's not a correct interpretation of extraordinary and compelling. So I think it should go back for an individualized determination and say, you know, look, he's he outlined she in her in her order close to running out of time. But if I could finish this, please. And in her order, she she noted, I think, three or four things. Lack of education, lack of job training, lack of visitation in his pro se motion. He he he outlined so many more things than that. Just like inhaling smoke from nearby forest fires, not having laundry, barbershop. There was a lot more that he mentioned. OK, so if what she thinks were, you know, the few things that were widespread was his particular experience, even if shared by other inmates at Sheridan for a certain amount of time, even if they were the same, were his experiences enough to constitute the extraordinary, compelling circumstance that would would warrant relief and getting to step two, which is thirty five, fifty three. Thank you. We'll give you a minute for rebuttal. Thank you. Your Honor's may it please the court. My name is Jennifer Ivers. I represent the government in this matter. The judge Gleason's decision in this case was not an abuse of discretion. She followed the correct legal framework. None of her factual conclusions were erroneous. Nothing about her decision was illogical or not based on current precedent. It seems like the biggest question that the court has had so far is addressing this issue of whether conditions of confinement can justify a compassionate release. And just looking in the context and what if Judge Gleason is hypothetical. So you have to tell me it's not the facts of this case had said, yeah, you're right. When I sent you to prison, I thought you'd be going to the normal sort of confinement. And you've now been subjected to much greater punishment than I anticipated at the time. So I do find this to be an extraordinary and compelling circumstance. Would that be an abuse of her discretion? Yes. Really? I think that would have been an abuse of discretion based on the law as it's been interpreted up to the point that she issued this decision. As I read the law, and maybe I read it wrong, we really leave up to the judge to determine what's extraordinary and compelling. In this case, she didn't think it was, but if she did, I'm not sure we could reverse her on that and find it an abuse of discretion. I would have thought your argument is that she didn't abuse her discretion, but her decision wasn't compelled by the law. Your Honor is correct. There is a lot of discretion placed in the court's hands, especially in these kind of scenarios. It's very fact specific. This is a resentencing. The judge is presumed to know the facts and the record. But really, there aren't any published Ninth Circuit cases saying that conditions of confinement can't be extraordinary and compelling. But the published case law that did exist at the time that Judge Gleason made this decision was the Rya case and the case that she cited. I think it was Coons from Louisiana. Both of those said, you know, the mere existence of the pandemic can't support compassionate release. And Mr. Gillespie is trying to say that he's making a different argument by focusing on his conditions of confinement. But it ultimately is the same question, right? Does the existence of the pandemic and its impact on inmates in custody support? But why couldn't a condition be extraordinary in comparison to the historical circumstances of imprisonment? Why does it have to be a comparison with what without what other inmates are facing versus the status quo of what imprisonment was like at the time that the sentence was was handed down? But yeah, I don't I'm not I guess I'm not trying to say that the judge is foreclosed from considering conditions of confinement as part of the extraordinary and compelling reasons. As you know, this court in Arruda said, you know, the court is free to consider what it wants to consider in determining what are extraordinary and compelling reasons. And certainly, you know, if Mr. Gillespie had medical conditions that other inmates also have, you know, we can't just that would justify his release. We can't dispute that. You know, it has to be he has to be the only person who presents these extraordinary and compelling circumstances. And I think I just to take a step back, I think Judge Gleason in this case didn't state as a rule that no inmate can be released if they are in a situation that's similar or the same as a lot of other inmates. In her order, she said Mr. Gillespie himself failed to present extraordinary and compelling circumstances because the only argument that he made was that he was subject to conditions of confinement that every other inmate was also subject to. And that the cases that he cited, she did a very deep dive into the cases that he had cited in his original motion and pointed out that those were based on specific medical conditions that defendants had, not generalized conditions of confinement. I guess the question maybe your opposing counsel is getting at is, is there any limits to this logic? Because the district court said, look, the conditions that he's subject to are very similar to the conditions that everybody is now subject to. Obviously, if those conditions were extremely harsh, totally unnecessary, outrageous, and egregious, you might think that just because everybody is subject to them doesn't make it okay. So I guess I wonder, does this really turn on the nature of the conditions and on some determination that those conditions, at least as he faces them, and by extension everyone else who's in that situation, they're not so egregious to warrant a finding that they're extraordinary and compelling? Yeah, there is a line somewhere, right? And the published case law doesn't give a lot of guidance about where on the spectrum conditions of confinement have to fall specific to this inmate for them to justify a compassionate release. But it's somewhere, you know, Mr. Gillespie's arguing the most sort of generous interpretation of the words extraordinary and compelling, which is that we are living in extraordinary times, therefore I need to be released. It's got to be somewhere before we get to that point. Under what circumstance would we find a judge's determination that there were not extraordinary and compelling circumstances to be an abuse of the judge's discretion? Can you think of any? Based on, specific to conditions of confinement? Yeah, to deal with conditions of confinement. I suppose that's where we are today. So imagine for me a case in which the judge said, no, that's not enough. And we'd say, no, you're just wrong. That's an abuse of discretion. Is there any in your view? It's a tricky question because... It was meant to be. Yeah, and I surely will struggle to answer it. Partly because that just doesn't seem to be the nature, like the purpose of the statute, right? Like you said, there's other ways to request relief from this court if, for instance, there's Eighth Amendment issues or the defendant's being denied his Sixth Amendment right to counsel. That more squarely address issues of conditions of confinement. Compassionate release seems to be looking at the way the statute is written and the way that the... Understanding that this is no longer by name, but the way that the Sentencing Commission interpreted that statute seems to be very focused on medical conditions, family issues, things of that nature. And so how conditions of confinement can be weighed by a district court, it's a hard question to answer. I think perhaps if an inmate was unfairly and repeatedly assaulted or subject to solitary confinement or something like that. And then also had medical conditions that resulted from that or something, potentially that could be extraordinary compelling reasons for relief. Again, focusing on the specific circumstances of that defendant. If there's no further questions on that point, I think the only other thing I wanted to touch on was regarding the argument that Judge Gleeson failed to adequately address Mr. Gillespie's rehabilitation. I would simply say that the court's decision really went above and beyond what has been required of courts in circumstances like these. Primarily pointing to the Chavez-Mesa decision that's focusing on the other subsection of compassionate release or of this statute. And in that case, the court just checked some boxes on a form order and the Supreme Court found that adequate. Here the court gave a thoughtful consideration to Mr. Gillespie's arguments. Those are the 3553 factors. And as to those the judge sentenced the person, knows what was going on at the time, this is an argument that there are new facts. Not the ones that you were thinking about at the time, but there are new facts. And in light of those new facts, the 3553 factors call for a lesser sentence. When somebody alleges new facts, does the judge at least have to acknowledge them and deal with them? To be fair in this case, the judge does note that he argues rehabilitation. Right, and the judge clearly is aware of that argument and the decision not to address it more thoroughly I think is still well within the judge's discretion. That said, in the context of these cases, the new facts, again, the court is, I think the record shows that the court was aware of the new facts. And there's no case law that says that the court has to thoroughly address every single even new fact that the defendant raises in a compassionate release motion. I am out of time. Let's see if my colleagues have any other questions. No, thank you and we'll give you a minute for rebuttal. Thank you, Your Honor. I just want to go back to your tough question. It cannot be that district courts are beyond review in selecting a rule for what constitutes extraordinary and compelling circumstances. They have broad discretion once they've defined the statute correctly to apply it. But they can't get the statute wrong. They can't define extraordinary and compelling wrong. That's what the district court did here. If you look at the order, the district court did not say, I think Mr. Gillespie's conditions were not so severe or didn't last long enough to constitute extraordinary and compelling circumstances. The government said there's got to be a line somewhere. This rule permits of no line. It says no matter what, if you're going to say that your conditions of confinement were tough because of the pandemic, you cannot succeed as a matter of law. And so I'm asking the court to review that de novo because the court never really did exercise its discretion. It just picked the wrong legal rule. If the district judge had just said, I've reviewed your filings and I find no extraordinary and compelling circumstances, would you have any argument of abusive discretion? I think I would. I'm wondering whether or not we're punishing her here for being more detailed in your argument. I'm certainly not trying to punish her. In other words, do we encourage district judges, if we parse their reasoning on these things, to just issue opaque orders, which the Supreme Court seems to say are fine? Thank you. Thank you for your arguments. I reject them. Well, I think that's, you know, that's why I mentioned Trujillo. And I think even Chavez Mesa would say that when somebody raises a non-frivolous, unique argument that raises specific facts that are not kind of ordinary, that the court does have a responsibility to permit appellate review. That sort of decision on these facts, on the presentation of arguments in this case, would not be sufficient. So I think you would have to send it back and say, hey, tell us more. So, you know, I certainly don't think you would be punishing the court. That was a bad choice of words. Do my colleagues have any other questions? If not, we thank both the government and the appellate for their arguments in this case. And this case will be submitted and we will be adjourned for the day. All rise. This court for this session stands adjourned.
judges: HURWITZ, BRESS, THOMAS